The Chancellor.
My reasons for reversing the decision of the vice chancellor are, that I think the matters attempted to be set up by way of answer constitute no defence whatever; and admitting it to be true that the alleged agreement was made between the complainant and her solicitor, as stated by Butler, the solicitor has not such an interest in the suit as to authorize the complainant to make him a party. If the agreement on the part of the solicitor was illegal, as I think it was, he acquired no interest even in the proceeds of the foreclosure suit; and if the agreement was valid, it did not authorize him to join in the
S. Sherwood, for the appellants, and
R. F. Winslow, for the respondent.
foreclosure suit, as he had no right to any part of the bond and mortgage, but only to a compensation out of the debt collected, after he had completed his service in collecting it.
From the above decision of the chancellor the defendants" appealed, and the case was argued here by
Beardsley, J.
In the view which I take of this case it is unnecessary to inquire whether the complainants’ solicitor made such-an agreement as is alleged on the part of the defendants, and as is indicated by the written memorandum set out in the case. If he did, it may have been champerty at common law, but was not an offence within any of the provisions of the-statute relative to the duties, privileges and liabilities of counsellors, attorneys and solicitors. (2 R. S. 287, 8.)
If it was the offence of champerty, the solicitor was punishable in the ordinary way, but the commission of the offence did not invalidate the mortgage, nor impair the obligation of those who executed it to pay the money which it purported to secure. An offer to use a mortgage, or any other security, valid in its inception, or even its use, for an illegal purpose, is not, at common law, any impediment to its collection, nor any color of defence, permanent or temporary, to the mortgagor or debtor, when payment is sought to be enforced. He is not allowed to assert that the vitality of his own obligation has become extinct by the illégal use to which that obligation has been applied, and thence infer that he is no longer liable on his engagement. Such a principle can hardly be seriously urged, and such a consequence cannot for a moment be admitted.
There is therefore no principle of the common law, or of equity, which will tolerate such a defence as was attempted to be set up in this case.
Nor, in my opinion, did the chancellor err in holding that *589 the solicitor was not a necessary party to the suit. The agreement, if made, did not contemplate that the solicitor was thereby to become an owner of part of the mortgage money. It was a mode of providing for the payment-of his compensation for making the foreclosure, and nothing more. He was to have a share of what might be obtained by the prosecution, but he was not thereby made a part owner of the mortgage. The solicitor therefore could not properly have been a party complainant in the cause.
The statute which has been referred to imposes certain restrictions upon counsellors, attorneys and solicitors. 1. They are not to buy or be concerned in buying any “ thing in action, with the intent and for the purpose of bringing any suit thereon.” (2 R. S. 288, § 71.) 2. Nor shall they lend or advance any money, bond, bill &c., “ as an inducement to the placing, or in consideration of having placed, in the hands of such attorney, counsellor or solicitor, or in the hands of any other person, any debt, demand or thing in action, for collection.” (Id. § 72.) These offences are declared to be misdemeanors, and are to be severely punished. (Id. § 73.) But if this mortgage was purchased or received for collection in violation of the provisions which have been stated, that would constitute no defence to a foreclosure of the mortgage in the ordinary way.
It is true that sections 75 to 81 provide, that if any such cause of action has been “ bought or procured” for collection, contrary to the true intent of the foregoing provisions, “ the plaintiff in such action shall be nonsuited.” But these provisions, in their terms, are confined to actions at law, and have no application whatever to proceedings in a court of chancery. They are highly penal in their nature and effect, and even if the same reason would require their application in a court of chancery, as at law, they cannot be so extended by the courts. The legislature have declared what shall be the effect, at law, of buying or procuring demands, in violation of the statute; but this court, I apprehend, cannot rightfully extend these penal provisions to proceedings in a court of chancery.
*590 ¡Ev.en at law, ¡however, the purchase or procurement of a demand for prosecution, .contrary to the statute, does not annul .or panpel the demand thus purchased or procured. It constitutes po defence to the debtor,, in the appropriate s.ense of that term. He is not, for that cause, to have a verdict in his favor, but the plaintiff, prosecuting ip pursuance of an illegal agreement, and in order to carry it into effect, is, under .the statute, to .be nonr suited. (§ 81.) But the demand may be purged of this illegal taint, and when prosecuted for the benefit of the real and bona fide holder, a recovery may be had at law, notwithstandingv th.ese penal provisions in the statute. They were designed to prevent any suit being carried on successfully when instituted in pursuance .of such illegal arrangement, and to punish the guilty party by subjecting him to the .payment of costs, but were not intended to aid the debtor, whose duty .to pay remains wholly unimpaired by the illegal use to which his obligation has been applied.
These provisions, however, h.av,e no application to proceedings in the court of chancery. They are confined to actions at la>y, and ip my estimation ought not to affect this case. This bill was filed and is prosecuted by the mortgagee, and whatever arrangement may- have been made .originally between the complainant and her solicitor, hjs affidavit shows that he has now np interest in the subject matter of the spit, I do not advert to this as a fact material to the determination of the case, for if the alleged agreement remained unrescinded by the parties, I should stil.l hold that the defence which is attempted to he set up is altogether- untenable.
It would indeed he a novel defence, if a mortgagor, whp admits the -mortgage money to he honestly due from him, can be allowed tp say that he is not to he compelled to pay hjs debt, because the mortgagee has offered or agreed to dispose of the mortgage upon some illegal arrangement, or to effect some illef gal purpose. I am satisfied the attempted defence is untenable, and that the decree of the chancellor should be affirmed.
*591 On the question being put, “Shall this decree be reversed?" all the members of the court present who heard the argument, seventeen in number, voted for affirming.
Decree affirmed.(a)

 This cause was argued at Buffalo on the 6th and 7th of August, 1844, and decided on the 10th of the same month.